HkndbRsoN, Judge.
 

 If we were now for the first time, putting a construction upon the act of 1715, requiring administrators, &c. to give bond, I think we should have but little doubt, that the bond required by that act, should be confined to the administration of the estate, so
 
 *478
 
 far only as regards the interest of the next of kin, that nothing could oo assigned as a breach of it, but what tended to their injury : and that all the duties prescribed in the condition would be regarded as subservient to their claims, and not to those of creditors. If any doubts could have been raised upon the point, I think that they would have been removed by the very able and lucid historical argument of the counsel for the Defendant.— And notwithstanding the case of the
 
 Archbishop of Canterbury
 
 v. House, Í think such is, and uniformly lias been the rule in the English Courts, upon lhe statute of
 
 Charles. Lord Holt,
 
 very soon after its passage, declared that it did not extend to creditors, and that it was made for the benefit of (he next of kin only. The cases of
 
 Greenside
 
 v.
 
 Benson,
 
 and
 
 Thomas
 
 v.
 
 Archbishop of Canterbury,
 
 fully shew what has since been the understanding of their Courts. As to the case of the
 
 Archbishop of Canterbury
 
 v.
 
 House,
 
 it does not appear from it, what was the breach assigned, although the bond had been delivered to a creditor, and he was carrying on the suit in
 
 thi\ Archbishop’s
 
 name ; for aught that appeared, it might be for an act in which the next of kin were concerned j the more especially, as otherwise we cannot reconcile what fell from
 
 Lord Mansfield,
 
 that he knew of no case or principle, which prohibited the Ordinary from delivering the bond to any person to sue upon, in his, the Ordinary’s name, with the case of the
 
 Archbishop of Canterbury
 
 v.
 
 Wills,
 
 as it cannot for a moment be believed that lie was ignorant of the opinion delivered by
 
 Holt,
 
 in that case.— But be this case as it may, it is in opposition to all that has gone before or has come after it, if from it vve are to understand that the non-payment of a debt can be assigned as a broach of an administration bond. Upon principle, a satisfactory reason can be assigned why administrators should give bond to distribute among the next of kin, and executors should not, and also that as executors were not to give bond to pay the debts,
 
 a for-tiori,
 
 administrators should not.
 

 
 *479
 
 The legatee claims from the bounty and free will of the testator, and it is the testator that appoints the executor, thereby directing who is to pay the legacy. The legatee must take as the testator gives, and as the testator has made (he selection to whom he will confide the management of his affairs, and not having thought proper to require surety of hifti to pay the legacies, it would seem very unfit that a legatee should demand it, unless in a case where there is a disposition manifested by the executor to waste the estate. In this case, a Court of Equity will compel the executor to give surety, but if is upon the. ground that if the testator could have foreseen his unfaithfulness, he would not have committed the trust to him. On the other hand, an administrator is selected by the Court; the deceased had no hand in his appointment; the distributees do not claim from him as an agent appointed by the deceased, but one appointed by the Court. It is proper therefore, as he is put into his office by law, that the law should require surety that he will distribute according to law. As to the position, that as executors are not required to give bond to pay debts,
 
 a fortiori
 
 an administrator should not, Í think it follows from this — a creditor claims not under the will or bounty of the testator. There is therefore no reason why he should be bound to acquiesce in the appointment which the debtor may think proper to make. There is no check upon the claim of the debtor as to whom he may select as his executor. He may appoint the most worthless man in the community, who is notwithstanding entitled by law to the executorship, and although it is true that a creditor may compel him, in a Court of Equity, to give surety for a faithful administration, yet that is an after thing, and affects not the principle. An Administrator, however, is appointed by the. Court. It is true, that the choice, is confined to the widow or next of kin, and if they refuse, to the creditors. Yet this affords some opportunity for a choice, and will generally enable the Qr-
 
 *480
 
 dinary to main1 a mo"e judicious selection than the most worthies* man in ilie community, whom the testator may . . , „ . ,. appoint executor, u he pleases, tins is 1 he tan-way ol siatms; the question. If either the oiieor the other should be exempt from giving surety for the payment, of debts, I think it might to bo 'he administrator. But at any rate, this reason is sufficient for the purpose for which the subject was introduced, viz. to shew that the reasons are equ 1 to Compel both to give surety, or to require it fmin n->ther. However, as far back as we have any knowh dge of the construction put upon the act of 1715, with tin- exception of one case at Hillsborough, before Judge McKay, it. has uniformly been considered by all pers-ms, the people, the bar, the bench, and the legislature, that the non-payment of a debt was a breach of an administration bond. The Legislature has so considered i» independently of, and long before the act of 1 807, requiting executors in certain cases to give bond, where a very plain opinion is expressed, that administrators were bound by their bond to p*y the debts out of the assets
 
 ;
 
 lor the construction put upon these bonds, was a matter of notoriety, and they did not interfere.
 

 After such an uniform opinion upon the subject for such a length of time, it would be the height of impropriety, to give a different construction to the act. It would unsettle and render insecure too much property. In some cases this may be our duty, where the. misconception is glaringly and manifestly wrong. But in this case it is not so ; the breach by the non-payment of a debt, is within the words of the bond, without a very shrewd con-st i notion. The words are,
 
 “and the goods and chattels, which shall
 
 come, &c.
 
 do well, and truly administer according to law ”
 
 And to show that a mal-admiuistration of the assets by failing to pay creditor*, is not within these words, we are under the necessity of going into a long hi torical argument, who h may possibly iead ns to a When we see the long and uniform wrung conclusion.
 
 *481
 
 custom of the country, so well, at least so firmly established as this is, we have no moral rii^ltt to disturb it, although we should be of opinion, that the words were not originally correctly understood.
 

 The judgment should he for die debt recovered in the origi ml suit, with interest to tin time of rendering the judgment in this case, in the Court below. The failure to pay that sum, when thus judicially ascertained, was the default imputed to the* administrator, and which he liaiing assets, ought to have paid ; also the costs of that suit, but not with interest thereon, for Plaintiff did not show tha' he liad paid them.
 

 Per Curiam. — Judgment affirmed.